**John A. SWARROW,**

v.

**Anna Marie BRASUHN, Appellee**

**Appeal of Dennis M. Makel, Esquire and C.E. Kurowski, Esquire, Appellants.**

**No. 1046 WDA 2011.**

Superior Court of Pennsylvania.

Argued Aug. 21, 2012.
Filed Nov. 13, 2012.

Charles E. Kurowski, Washington, for Kurowski and Makel, appellants.

Jessica S. Roberts, Washington, for appellee.

BEFORE: MUSMANNO, J., BOWES, J., and WECHT, J.

MEMORANDUM BY BOWES, J.

Motion to strike denied. Contempt order vacated. Fines remitted. Jurisdiction relinquished.

Judge WECHT files a Concurring Opinion.

CONCURRING OPINION BY WECHT, J.:

I join the majority's decision, and I concur fully with its reasoning. I write separately to reinforce our admonition to the trial court concerning its handling of this matter.

This case presents an illustration of what can transpire when a trial judge loses sight of what is important and fails to maintain "the impersonal authority of law." *Mayberry v. Pennsylvania,* 400 U.S. 455, 465, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (citation omitted). In this case, the parties had engaged in a dispute over custody of their child. The parties resolved that dispute. Their attorneys were trying to finalize the settlement agreement, and get that agreement executed by the court. Instead of facilitating that resolution and bringing the matter to conclusion for the sake of the child involved, the trial court here amplified the conflict, and created additional and unnecessary costs and stresses, while at the same time inconveniencing litigants and counsel and unnecessarily and improperly adjudicating two lawyers in contempt.

As our Supreme Court has stated repeatedly and clearly, an adjudication of contempt is no trivial matter, and should be employed sparingly. "[I]t is clear that the guiding principle should be that 'only the least possible power adequate to the end proposed' should be used in contempt proceedings." *Commonwealth v. Stevenson*, 482 Pa. 76, 393 A.2d 386, 392 (1978) (citing *United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975) (quoting *Anderson v. Dunn*, 19 U.S. 204, 231, 6 Wheat. 204, 5 L.Ed. 242 (1821))).

Trial courts are instructed to "first consider less severe remedies such as civil contempt before imposing summary criminal contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate ..." *Commonwealth v. Moody*, 46 A.3d 765, 773 n. 7 (Pa.Super.2012), *reargument denied* (July 18, 2012) (quoting *Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971, 976 (1978)). While the trial court here referred to its contempt finding as civil, that

ruling was, as the majority correctly holds, criminal in nature. Majority Memorandum at 7–10. The trial court not only created a controversy where there was none, it also bypassed the less severe form of contempt, civil, in favor of the harsher, criminal contempt.[1]

As the majority correctly observes, the record here bespeaks a marked level of animus, indeed, hostility. It may well be that counsel was responsible for some of this animus. But a trial judge does not have the luxury of wallowing in, or exacerbating, rancor. A trial judge must always maintain "the image of the impersonal authority of law." *Mayberry*, 400 U.S. at 465, 91 S.Ct. 499 (citation omitted). This is especially true in a child custody case, where emotion levels are high and where the objective is to get the parties' agreement finalized so that the lives of children may proceed outside the vortex of litigation.

Essentially, what the trial court did here is to create out of whole cloth a collateral dispute, that is, to pick a fight.[2] In such a

---

1. Further evidence that the contempt was criminal in nature is the fact that the trial court imposed a $500 fine on each Appellant, arbitrarily, and without specific correlation to any out-of-pocket attorney fees actually incurred by Mother. Moreover, it cannot be said that the relief requested was "for the benefit of the complainant," *See Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669, 673 (1956) (listing the five factors indicative of civil contempt), in view of the fact that the unknown "remaining balance" of Appellants' $1,000 combined penalty was awarded to the county law library. Reproduced Record at 63a. Such a fine is suggestive of criminal contempt, in which the interests of the general public are at issue and the ruling is punitive in nature.

2. In addition, as I have already indicated, the contempt proceedings in this case were fundamentally flawed. First, as the Majority describes thoroughly, the trial court was confused about the distinction between civil and

criminal contempt. While concluding that the purpose of its contempt order was civil, the trial court also stated that its intentions were, at least in part, to vindicate its authority. This latter objective sounds, of course, in criminal contempt. *Knaus* at 672 ("The dominant purpose of a contempt proceeding determines whether it is civil or criminal. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt.") Moreover, as the Majority points out, the rule to show cause hearing proceeded without the trial court swearing in any of the lawyers who appeared and testified. Although the Majority appears comfortable with the fact that the lawyers have a duty of candor toward the Court (Majority Memorandum at 5 n. 4), I wish to emphasize that this duty of candor, while mandated as a disciplinary matter, does not suffice for testimonial purposes. When a record is taken, all witnesses, whether law-

fight, the trial judge possesses greater leverage by virtue of his judicial office. Indeed, the authority of the state is at his beck and call.[3] For the trial judge to employ that power in a spirit of rancor amounts to bullying. This cannot be countenanced. When a trial judge becomes "so 'personally embroiled' with a lawyer" that "the image of ... impersonal authority" threatens to give way to something more suggestive of personal payback, the trial judge has a duty to recuse. *Mayberry v. Pennsylvania*, 400 U.S. at 465, 91 S.Ct. 499 (quoting *Offutt v. United States*, 348 U.S. 11, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954)).

It should go without saying that trial judges can, and indeed must, vindicate their authority where necessary. Disruptions in court cannot be tolerated. Here, however, there was no disruption in court whatsoever. The trial judge went out of his way to foment a problem that did not exist, or that did not need to exist. Ultimately, far from vindicating the court's authority, these actions served only to undermine it.

---

yers or otherwise, must be placed under oath. *See Dunsmore v. Dunsmore*, 309 Pa.Super. 503, 455 A.2d 723, 724 (1983) (case remanded because record defective for several reasons, including failure to place father under oath before taking of testimony, status as attorney entitling him to no special consideration).

3. "[I]n societies like ours the command of the public force is intrusted [*sic*] to the judges in certain cases, and the whole power of the state will be put forth, if necessary, to carry out their judgments and decrees." Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L.Rev. 457, 457 (1897).