2022 PA Super 82

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FRANKLIN ROOSEVELT DABNEY JR. | : | |
| | : | |
| Appellant | : | No. 638 MDA 2021 |

Appeal from the Judgment of Sentence Entered May 4, 2021,
in the Court of Common Pleas of Adams County,
Criminal Division at No(s): CP-01-CR-0001083-2020.

BEFORE: OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY KUNSELMAN, J.:                    **FILED MAY 05, 2022**

Franklin Roosevelt Dabney, Jr. appeals from the judgment of sentence imposed following his convictions for driving under the influence (DUI) of a Schedule I controlled substance, DUI of a Schedule I controlled substance metabolite, DUI of a drug (actual impairment), careless driving, and maximum speed limits.[1] Dabney challenges, first, the denial of his petition for writ of *habeas corpus* wherein he argued that medical marijuana is not a Schedule I controlled substance for purposes of Section 3802(d)(1)(i) and (iii) and, second, the denial of his motion to suppress the results of the blood draw taken after his arrest for suspicion of DUI. We affirm.

The suppression court found the following facts:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(d)(1)(i), 3802(d)(1)(iii), 3802(d)(2), 3714(a), and 3362(a)(3).

1. Trooper Mark Brandt is an employee with the Pennsylvania State Police and has been a Trooper for 5 years.

2. In his career, Trooper Brandt has been involved in approximately 100 DUI investigations; approximately 50% of the investigations involved individuals suspected of driving under the influence of a controlled substance with 35%–40% involving marijuana. Trooper Brandt is familiar with the odor of raw and burnt marijuana.

3. As part of Trooper Brandt's training he was instructed in the Standardized Field Sobriety Test (SFST) and Advanced Roadside Impaired Driving Enforcement (ARIDE) training. ARIDE deals specifically with individuals suspected to be under the influence of controlled substances.

4. On April 27, 2020, Trooper Brandt was stationary on Route 15 in Tyrone Township, Adams County, Pennsylvania, in full uniform and in an unmarked police vehicle conducting radar and clocked a blue Hyundai Sonata traveling 93 miles per hour in a 65 mile per hour zone.[2]

5. Trooper Brandt conducted a traffic stop of the Hyundai Sonata in Tyrone Township. [Dabney] was driving the vehicle and there was a front and back seat passenger in the vehicle.

6. Other than speeding, trooper Brandt did not observe any other erratic driving and [Dabney] safely stopped his vehicle.

7. Trooper Brandt was wearing a disposable mask for Covid-19 precaution and detected the faint odor of raw marijuana as he approached [Dabney's] vehicle.

8. Upon request from Trooper Brandt, [Dabney] properly provided all documents and information.

9. Trooper Brandt returned to his police vehicle and prepared a citation for speeding. Trooper Brandt reapproached the vehicle and had contact with [Dabney] while [Dabney] was seated in the driver's seat. While speaking with [Dabney], Trooper Brandt noticed a strong odor of raw marijuana coming from inside the vehicle. [Dabney] denied having marijuana in the vehicle.

---

[2] Trooper Brandt first testified that the speed was 92 miles per hour, N.T., 12/14/20, at 13–14, then that it was 93 miles per hour, *id.* at 23. The above factual finding is supported by the record, so we will not disturb it.

[Dabney] produced a medical marijuana card and related the odor of marijuana is probably from his clothes.

10. Trooper Brandt directed [Dabney] and the two passengers to exit the vehicle. Trooper Brandt and Trooper [Clay] Forcey conducted a warrantless probable cause search of [Dabney's] vehicle. Trooper Brandt observed flakes of suspected marijuana around the center console and front passenger seat. Trooper Forcey located a white plastic shopping bag containing three individually packaged clear plastic bags containing suspected marijuana in the vehicle's trunk.

11. While interacting with [Dabney], Trooper Brandt observed that [Dabney's] eyes were dilated and red.

12. Trooper Brandt requested SFST tests and [Dabney] agreed. Trooper Brandt conducted the [Horizontal Gaze Nystagmus (HGN)] test, walk and turn test, and one leg stand test.

13. During the walk and turn test Trooper Brandt observed [Dabney] raise his arms, stop briefly during the test, and not count correctly. These were all indicators that [Dabney] might be impaired.

14. During the one leg stand test, Trooper Brandt observed [Dabney] improperly lift his leg, sway and improperly put his foot down, all indicators of impairment.

15. Trooper Brandt also conducted two ARIDE tests, the lack of convergence test and the Romberg balance test. Trooper Brandt observed a lack of convergence with [Dabney's] eyes,[3] observed eyelid tremors during the Romberg balance test and observed [Dabney] did not properly estimate the proper time period for the test, all indicators of impairment.

*   *   *

18. Trooper Brandt placed [Dabney] under arrest for suspected driving under the influence of a controlled substance. [Dabney] was transported to Gettysburg Hospital for a blood test.

---

[3] Contrary to the suppression court's findings, Trooper Brandt testified that he did not observe any lack of convergence. N.T., 12/14/20, at 22.

Trial Court Opinion, 1/29/21, at 2–3. Dabney's blood contained active marijuana compounds and metabolites. In addition to the above offenses, Dabney was charged at Counts 1, 2, and 3 with violation of the Medical Marijuana Act, possession of marijuana, and possession of a small amount of marijuana.[4]

On November 9, 2020, Dabney filed an omnibus pre-trial motion to suppress and petition for writ of *habeas corpus*. The suppression court heard the matter on December 14, 2020, and the parties filed briefs on January 12 and 13, 2021. The Commonwealth agreed to the suppression of the marijuana found in the vehicle.

On January 29, 2021, the suppression court denied Dabney's motion to suppress based on Trooper Brandt's lack of probable cause to arrest and the petition for writ of *habeas corpus*. Based on the Commonwealth's concession, the suppression court granted Dabney's motion to suppress the fruits of the vehicle search. The Commonwealth withdrew Counts 1, 2, and 3.

The case proceeded to a non-jury trial on May 4, 2021 based on a stipulated record, where the court found Dabney guilty on all remaining counts. The court sentenced Dabney the same day. Dabney timely appealed, raising the following two issues for our review:

> 1. Did the lower court err in determining that [Dabney's] valid prescription for Medical Marijuana, and the legal ingestion

---

[4] 35 P.S. §§ 10231.303(b)(6), 780-113(a)(16), and 780-113(a)(31)(i).

- 4 -

thereof, did not prevent prosecution under sections 3802(d)(1)(i) and 3802(d)(1)(iii) of the Vehicle Code?

2. Did the lower court err in determining that there was sufficient probable cause to arrest [Dabney] for driving Under the Influence and should have suppressed the subsequent blood draw of [Dabney]?

Dabney's Brief at 4.

## I.  Medical Marijuana Is a Schedule I Controlled Substance.

Dabney first argues that marijuana that is ingested pursuant to the Medical Marijuana Act, 35 P.S. §§ 10231.101–10231.2110 (MMA), is not a controlled substance within the meaning of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-101–780-144 (CSA) (also called the Drug Act), and therefore he could not be prosecuted for DUI under 75 Pa.C.S.A. § 3802(d)(1) based on medical marijuana in his blood.[5]

Dabney's issue is one of statutory interpretation. Our standard of review is well-settled:

> Statutory interpretation is a question of law, therefore our standard of review is *de novo*, and our scope of review is plenary. **Commonwealth v. Hall**, 622 Pa. 396, 80 A.3d 1204, 1211 (2013). "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." **Commonwealth v. McCoy**, 599 Pa. 599, 962 A.2d 1160, 1166 (2009) (citation omitted).
>
> Generally, a statute's plain language provides the best indication of legislative intent.  **Id.**  We will only look beyond the

_____

[5] In this first issue, Dabney does not challenge his prosecution under Section 3802(d)(2).

plain language of the statute when words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning. **Hall**, 80 A.3d at 1211.

**Commonwealth v. Torres–Kuilan**, 156 A.3d 1229, 1231 (Pa. Super. 2017)

(quoting **Commonwealth v. Popielarcheck**, 151 A.3d 1088, 1091–92 (Pa.

Super. 2016)).

The Vehicle Code provides that

[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the [CSA];

(ii) Schedule II or Schedule III controlled substance, as defined in [the CSA], which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S.A. § 3802(d)(1).[6] "The fact that a person charged with [DUI] is or

has been legally entitled to use alcohol or controlled substances is not a

defense to a charge of [DUI]." 75 Pa.C.S.A. § 3810.

---

[6] Under Section 3802(d)(1), proof of actual impairment is not required. **Commonwealth v. Etchison**, 916 A.2d 1169, 1174 (Pa. Super. 2007), *distinguished on other grounds by* **Commonwealth v. Griffith**, 32 A.3d 1231 (Pa. 2011).

The CSA defines schedules of controlled substances in relevant part as follows:

> The following schedules include the controlled substances listed or to be listed by whatever official name, common or usual name, chemical name, or trade name designated.
>
> (1) Schedule I. In determining that a substance comes within this schedule, the secretary shall find: a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision. The following controlled substances are included in this schedule:
>
>        \*      \*      \*
>
>     (iv) Marihuana.

35 P.S. § 780-104.[7]

Prior to enactment of the MMA, we rejected a challenge to marijuana's classification as a Schedule I controlled substance based on its medical use in the United States:

> [T]here is no requirement that the Schedule I substances listed under 35 P.S. § 780-104 continuously conform to the standard that there be "a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision." 35 P.S. § 780-104(1). . . . Regardless of whether there are accepted medical uses for marijuana in the United States, marijuana remains a Schedule I substance under the Drug Act.

***Commonwealth v. Waddell***, 61 A.3d 196, 207 (Pa. Super. 2012).

---

[7] "Under the Drug Act, 'marijuana' is spelled: 'marihuana.' These words are interchangeable, though 'marijuana' appears more frequently in conventional usage. Either term refers to the *genus* of flowering plants known as *Cannabis*, including the species *Cannabis sativa*, *Cannabis indica*, and *Cannabis ruderalis*." ***Commonwealth v. Waddell***, 61 A.3d 196, 203 n.3 (Pa. Super. 2012).

The MMA was enacted effective May 17, 2016. Under the MMA, medical marijuana is defined as marijuana for certified medical use as set forth in the MMA. 35 P.S. § 10231.103. "Notwithstanding any provision of law to the contrary, use or possession of medical marijuana as set forth in [the MMA] is lawful within this Commonwealth." 35 P.S. § 10231.303. However, it is unlawful to use medical marijuana except as provided in the MMA. 35 P.S. § 10231.304(a). The MMA does not prevent civil or criminal penalties for "[u]ndertaking any task under the influence of medical marijuana when doing so would constitute negligence." 35 P.S. § 10231.1309(1). Finally, the MMA provides that it takes precedence over the CSA in areas of conflict:

> The growth, processing, manufacture, acquisition, transportation, sale, dispensing, distribution, possession and consumption of medical marijuana permitted under [the MMA] shall not be deemed to be a violation of the [CSA]. If a provision of the [CSA] relating to marijuana conflicts with a provision of [the MMA], [the MMA] shall take precedence.

35 P.S. § 10231.2101.

After the MMA was enacted, we again considered statutory and constitutional challenges to marijuana's classification as a Schedule I controlled substance. *Commonwealth v. Jezzi*, 208 A.3d 1105 (Pa. Super. 2019). Jezzi asserted that because the General Assembly found that marijuana was now accepted for its medical value, it no longer fit within the definition of a Schedule I controlled substance. *Id.* at 1109. Relying on *Waddell* and the text of the MMA, we rejected his statutory interpretation:

- 8 -

Initially, Appellant's statutory "irreconcilable differences" argument lacks merit, where the MMA simply establishes a scheme for the lawful use of medical marijuana. *See* 35 P.S. §§ 10231.102(3), 10231.102(1) (stating scientific evidence suggests medical marijuana is one potential therapy that may have therapeutic benefits). The usage of language like "suggests," "potential," and "may" [in 35 P.S. § 10231.102(1), Declaration of policy,] does not conclusively demonstrate the General Assembly found marijuana to have accepted medical use other than for its palliative or analgesic effects. Rather, the statutory language illustrates the General Assembly's intent to create legal avenues for research into the use of medical marijuana while providing pathways to potential relief for certain categories of patients. *See id.*

Furthermore, the temporary nature of the MMA serves as an acknowledgement of the General Assembly that more research into the medical value of marijuana is necessary. *See* 35 P.S. § 10231.102(4). The MMA established a medical marijuana program to serve as a stopgap measure, "pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues." *See id.* The plain text of the MMA acknowledges the potential therapeutic value of medical marijuana, but it does not declare that marijuana has accepted medical use. *See* 35 P.S. § 10231.102(1), (3); *Waddell, supra*. Instead, the MMA intends to be "a temporary measure, pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues." *See* 35 P.S. § 10231.102(4). Therefore, the MMA and the CSA Schedule I classification of marijuana do not conflict on the ground of "currently accepted medical use." Instead, the General Assembly allows for the use of medical marijuana under very specific guidelines which, when followed, will not lead to criminal punishment. *See* 35 P.S. § 10231.2101.

*Id.* at 1114. Likewise, applying rational basis scrutiny, we rejected Jezzi's Equal Protection challenge. *Id.* at 1115 (holding that because marijuana's Schedule I classification "is rationally related to the governmental objective of public protection," it does not violate the Equal Protection Clause).

We also addressed the ongoing classification of marijuana as a Schedule I controlled substance for DUI purposes in **Commonwealth v. Murray**, No. 316 WDA 2020, 2020 WL 7861244 (Pa. Super. Dec. 31, 2020) (unpublished memorandum). Murray, who was authorized under the MMA to procure and use medical marijuana, claimed that the MMA preempted his prosecution under Section 3802(d)(1)(i). **Id.** at *3. The panel agreed that under the MMA, "'there is a legal distinction between marijuana and medical marijuana,'" but concluded that medical marijuana was not at issue because Murray illegally obtained and smoked marijuana before driving. **Id.** at *5; **but cf. Commonwealth v. Grimes**, No. 980 MDA 2019, unpublished memorandum at *6 (Pa. Super. Jan. 31, 2020) (finding sufficient evidence for Section 3802(d)(1)(i) and (iii) convictions despite citation to the MMA).

Finally, after the parties' submissions here, we decided the Section 3802(d)(1) case of **Commonwealth v. Stone**, 2022 PA Super 65, ___ A.3d ___, 2022 WL 1087372 (Apr. 12, 2022) (*en banc*). In **Stone**, we rejected a proposed jury instruction that medical marijuana is not a Schedule I controlled substance and that to convict Stone, the Commonwealth had to prove that the THC and metabolites in his blood were from non-medical marijuana. **Id.** at *4. Because marijuana, "which includes medical marijuana," is a Schedule I controlled substance, the jury instruction misstated the law. **Id.** at *7.[8]

---

[8] We declined to provide an advisory opinion for the Commonwealth's final issue, which was whether a medical marijuana card prevents a Section 3802(d)(1) conviction. **Stone**, ___ A.3d at ___, 2022 WL 1087372, at *8.

## A. Arguments of the parties

Dabney argues that his prescription for medical marijuana should prohibit the Commonwealth from charging and prosecuting him under 75 Pa.C.S.A. § 3802(d)(1)(i) and (iii) because medical marijuana is not a Schedule I controlled substance in Pennsylvania. Dabney's Brief at 12–13, 21–23. He urges that a contrary interpretation would render Section 3802(d)(1) in direct conflict with the MMA. *Id.* at 13–15 (citing 35 P.S. §§ 780-104, 10231.102, 10231.103, and 10231.2101).

Dabney emphasizes our observation in *Jezzi* that "medical marijuana is not listed in the CSA as a Schedule I substance, only marijuana is listed." *Id.* at 17 (quoting *Jezzi*, 208 A.3d at 1115). He distinguishes the outcomes of *Jezzi* and *Murray* on the basis that the defendants in those cases did not comply with the MMA, whereas there was no evidence considered by the suppression court here to indicate Dabney's noncompliance. *Cf. Jezzi*, 208 A.3d at 1114 ("[Jezzi, who grew marijuana plants prior to enactment of the MMA,] did not meet any criteria under the MMA to merit its protection directly or indirectly."); *Murray*, No. 316 WDA 2020, at *11–12 (reiterating the trial court's findings that Murray had illegally obtained and smoked marijuana before driving); *see also Stone*, ____ A.3d at ____, 2022 WL 1087372 at *1–2 (summarizing that Stone did not have his medical marijuana card with him yet had a bag of marijuana, and the Trooper smelled burnt marijuana, which could reflect violations of 35 P.S. §§ 10231.303(b)(7) and 10231.304(b)(1)).

Presumably regarding the application of Section 3802(d)(1)(iii), Dabney quotes our reasoning in **Commonwealth v. Glenn**, 233 A.3d 842, 846 (Pa. Super. 2020), in which we stated, "If an individual has a medical prescription for a controlled substance such as Fentanyl, it follows that the individual may lawfully have metabolites produced by the controlled substance in their bloodstream while their body is metabolizing the Fentanyl." **Id.**

The Commonwealth counters that the suppression court's ruling was correct. The Commonwealth mirrors the suppression court's analysis, noting that statutory and decisional law has not altered marijuana's classification as a Schedule I controlled substance. Commonwealth's Brief at 11. It observes that **Jezzi** did not reclassify medical marijuana or address the impact of the MMA on the Vehicle Code. The Commonwealth notes that **Glenn** concerned a **Schedule II** controlled substance and its metabolite, unlike the instant case. **Compare** 75 Pa.C.S.A. § 3802(d)(1)(ii) (prohibiting driving with a Schedule II controlled substance "which has not been medically prescribed for the individual"), **with id.** § 3802(d)(1)(i) (containing no such exception). The Commonwealth quotes Judge Stabile's concurrence in **Commonwealth v. Yeager**, 2020 WL 6799113, No. 2036 MDA 2019, non-precedential concurring memorandum at *7 (Pa. Super. Nov. 19, 2020) (likening medical marijuana to alcohol, both of which can legally be consumed but cannot legally be above certain levels in the blood of a person who drives). Absent an exception under the Vehicle Code, the Commonwealth concludes that a medical marijuana card does not prevent prosecution under Section 3802(d)(1)(i) or (iii).

**B. Analysis**

After careful consideration, we find that medical marijuana remains a Schedule I controlled substance for purposes of Section 3802(d)(1). Contrary to Dabney's argument, no conflict exists between the MMA and the Vehicle Code. The Vehicle Code and the CSA render it illegal to drive with any amount of a Schedule I controlled substance in one's blood. 75 Pa.C.S.A. § 3802(d)(1)(i). Dabney attempts to argue that based on the MMA, medical marijuana is not a Schedule I controlled substance. We are unpersuaded.

As explained in **Jezzi**, the MMA did not remove marijuana from the list of Schedule I controlled substances. **Jezzi**, 208 A.3d at 1115. There is no need for "medical marijuana" to be listed as a Schedule I controlled substance because medical marijuana **is** marijuana, specifically marijuana "for certified medical use." 35 P.S. § 10231.103. All marijuana, medical or otherwise, remains a Schedule I controlled substance in Pennsylvania. **Stone**, ___ A.3d at ___, 2022 WL 1087372, at *7.

Section 3802(d)(1)(i) prohibits driving with marijuana in one's blood, notwithstanding the MMA. The MMA takes precedence over the CSA related to "[t]he growth, processing, manufacture, acquisition, transportation, sale, dispensing, distribution, possession and consumption of medical marijuana permitted under" the MMA. 35 P.S. § 10231.2101. Therefore, "compliance with the MMA will not constitute a crime under the CSA." **Commonwealth v. Barr**, 266 A.3d 25, 41 (Pa. 2021) (quoting **Commonwealth v. Barr**, 240 A.3d 1263 (Pa. Super. 2020)). However, what Section 3802(d)(1) prohibits

is not "growth, processing, manufacture, acquisition, transportation, sale, dispensing, distribution, possession [or] consumption of medical marijuana" but rather **driving** with a controlled substance in one's blood. **Yeager**, **supra**, at *7 (Stabile, J., concurring) ("Simply stated, it is illegal to smoke or vape marijuana and drive.").[9] The MMA does not take precedence over laws **not** specified in 35 P.S. § 10231.2101. **See** 35 P.S. § 10231.1309(1) (allowing civil and criminal penalties for negligently undertaking tasks under the influence of medical marijuana).[10] As such, Dabney is not "facing a criminal conviction for the legal use of his medical marijuana." Dabney's Brief at 19. He was prosecuted for **driving** after such use. As in **Jezzi** and **Stone**, we find that the MMA, CSA, and Vehicle Code can be read in harmony.

Having found that Section 3802(d)(1)(i) applies to all marijuana, even medical marijuana, we likewise conclude that Section 3802(d)(1)(iii) applies to metabolites of all marijuana, including medical marijuana. First, subparagraph (iii) references subparagraph (i), which has no exception for

_____

[9] **See also** Michael DeAngelo, Comment, <u>Medical Marijuana and Driving Under the Influence in Pennsylvania</u>, 92 Temp. L. Rev. 225, 238 (2019) ("With the passing of the MMA, the Pennsylvania state legislature did not amend the [CSA] nor state DUI laws. Marijuana remains a Schedule I controlled substance, and as such, is prosecutable under section 3802(d)(1) as a *per se* offense when any amount of marijuana, or its metabolite, is found in a person's system. No showing of impairment is required." (footnotes omitted)).

[10] Although not necessary to the disposition of this issue, legislative history pre- and post-enactment of the MMA further supports our conclusion. S.B. 3, Amend. A06066 (Pa. 2016) (rejected language warning about DUI of medical marijuana); S.B. 167 (Pa. 2021) (proposed removal of DUI penalty for medical marijuana use, referred to committee); H.B. 900 (Pa. 2021) (same).

medical marijuana. Second, unlike in **Glenn**, 233 A.3d at 846, it is illegal to drive with the active substance of marijuana in one's blood. Therefore, it is not absurd or unreasonable that it is also illegal to drive with a metabolite of that substance in one's blood.

Because Dabney drove with marijuana in his blood, and because all marijuana, including medical marijuana, remains a Schedule I controlled substance for purposes not prohibited by the MMA, we hold that Dabney could be charged and prosecuted under Section 3802(d)(1)(i) and (iii). Therefore, we affirm the suppression court's disposition of this issue.

## II. Trooper Brandt Had Probable Cause to Arrest Dabney.

Second, Dabney claims that the suppression court erred in concluding that there was probable cause to arrest him for DUI and in failing to suppress the blood draw that followed. Dabney's Brief at 4. Dabney acknowledges the legality of the initial traffic stop for speeding. **Id.** at 25. However, he argues that Trooper Brandt began a new investigative detention when he asked about the marijuana odor and asked Dabney to exit the vehicle. **Id.** at 27–30. Dabney stresses that the only **additional** basis to detain him at that moment was the odor of raw marijuana. Therefore, he submits that Trooper Brandt's demand that he perform field sobriety tests amounted to an illegal detention not supported by reasonable suspicion. **Id.** at 30–33.[11]

_____

[11] Dabney makes this new-investigative-detention argument for the first time on appeal. Although this would be a basis for us to find waiver, **see** Pa.R.A.P.
*(Footnote Continued Next Page)*

We find no merit to this issue. Our Supreme Court has held that because of the MMA, "the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances." **Barr**, 266 A.3d at 44. Assuming *arguendo* that **Barr** also applies to a determination of reasonable suspicion for an investigative detention, we find that Trooper Brandt could consider the odor **as well as** the other factors from the initial stop. "[I]nformation obtained by a police officer during a lawful initial traffic stop may be used to justify re-engagement with the driver after the police officer indicates the driver is free to go." **In the Interest of A.A.**, 195 A.3d 896, 898 (Pa. 2018), *abrogated on "plain smell" grounds by* **Barr**, 266 A.3d at 41. Here, the odor of raw marijuana is but one factor that Trooper Brandt could consider in addition to the factors supporting his initial traffic stop, which Dabney acknowledges was legal. Dabney's Brief at 25. Therefore, Trooper Brandt had reasonable suspicion to detain Dabney to conduct field sobriety tests. Likewise, we discern no error of law in the suppression court's resulting conclusion that Trooper Brandt had probable cause to arrest Dabney under suspicion of DUI following the failed field sobriety tests. **See Commonwealth v. Salter**, 121 A.3d 987, 996–98 (Pa. Super. 2015) (finding probable cause to arrest under suspicion of DUI based on field sobriety tests).

_____

302, we will address the merits because the Commonwealth has not argued that Dabney waived this issue. **Cf. Commonwealth v. Wolfel**, 233 A.3d 784, 790 (Pa. 2020) (reversing this Court's *sua sponte* finding of waiver).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/5/2022