J-A23017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WAYNE PAUL BURKETT | : | |
| | : | |
| Appellant | : | No. 1717 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 14, 2023
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s): CP-31-CR-0000281-2021

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.: **FILED: JANUARY 28, 2025**

Appellant, Wayne Paul Burkett (Appellant), appeals *pro se* from the judgment of sentence following his jury trial convictions for driving under the influence (DUI) of alcohol (general impairment (BAC[1] .08-.10) – second offense) and DUI (metabolite of a controlled substance – second offense).[2] We affirm.

The trial court summarized the facts of this case as follows:

[O]n the evening of March 23, 2021, [Appellant] was driving his pickup truck northbound on Hill Valley Road, State Route 747, in Shirley Township, Huntingdon County. He was observed by Pennsylvania State Trooper Duane Mock, who was also driving northbound on State Route 747 some distance behind. Trooper

---

[1] The abbreviation "BAC" refers to blood alcohol content.

[2] 75 Pa.C.S.A. §§ 3802(a)(2) and 3802(d)(1)(iii). After the jury verdict, the trial court separately found Appellant guilty of the summary motor vehicle code violations of failure to keep right and failure to drive within a single lane. 75 Pa.C.S.A. §§ 3301(a) and 3309(1), respectively.

Mock's testimony was that he observed [Appellant's] truck cross over the double-yellow centerline, and in response, he sped up to catch up with [Appellant's] truck and obtain its license plate number. As he came up behind [Appellant's] truck just prior to a right-hand bend, he observed [Appellant] swerve over the double yellow line a second time. At that point, Trooper Mock activated his emergency lights and conducted a traffic stop of [Appellant's] truck. Based on information obtained [from Appellant] and observations made by Trooper Mock, Trooper Mock believed [Appellant] to be driving under the influence of alcohol and marijuana. Notably, in response to questions from Trooper Mock, [Appellant] disclosed that he had a valid [M]edical [M]arijuana [Act[3] (MMA)] card, a prescription for medical marijuana, and that he had ingested medical marijuana earlier that day. Trooper Mock administered standard field sobriety tests to [Appellant], both on his own and with the assistance of another state trooper who responded to the scene, Trooper Cole Walters. Trooper Mock then arrested [Appellant] for DUI, and an evidentiary blood draw was performed. Laboratory testing revealed that [Appellant] had a [BAC of 0.088 [%] and there was Delta-9 Carboxy THC (metabolite of [marijuana]) present in his blood in the amount of 6.3 ng/ml.

Trial Court Opinion, 2/13/2024, at 1-2 (footnote omitted).

Procedurally, the case progressed as follows. On July 7, 2021, Appellant filed a counseled *omnibus* pretrial motion seeking, *inter alia*, the dismissal of some of the criminal charges against him, as well as suppression of evidence. Important to this appeal, counsel for Appellant argued that Appellant "had used his medical marijuana as prescribed, in compliance with the [MMA], and that therefore his medical marijuana was not a Schedule I drug for purposes of the DUI statute." *Id.* at 4 (footnote omitted). Appellant also argued that Trooper Mock lacked probable cause to effectuate the traffic stop and subsequently made materially false statements of fact in his affidavit of

---

[3] 35 P.S. § 10231.101, *et seq*.

probable cause in support of charges filed against Appellant. *Id.* at 12-14. As such, Appellant maintained that the evidence obtained as a result of the traffic stop required suppression. Following a hearing, the trial court dismissed some of the criminal charges the Commonwealth had lodged against Appellant.[4] The trial court, however, denied suppression. Following a trial commencing on March 13, 2023, a jury convicted Appellant of the aforementioned crimes, and the trial court also convicted Appellant of the two summary traffic violations as set forth above. On July 6, 2023, the trial court sentenced Appellant to an aggregate term of 11 to 23 months of incarceration, followed by 18 months of license suspension, plus fines and the costs of prosecution. This timely, *pro se* appeal followed.[5]

---

[4] The trial court dismissed the charges of DUI alcohol (general impairment, incapable of driving safely – second offense), DUI controlled substance (general impairment, incapable of driving safely – second offense), and DUI combination of alcohol and controlled substance (general impairment, incapable of driving safely – second offense). 75 Pa.C.S.A §§ 3802(a)(1), 3802(d)(2), and 3802(d)(3), respectively. The Commonwealth also later withdrew a charge of careless driving, 75 Pa.C.S.A. § 3717(a).

[5] Appellant was represented by privately retained counsel throughout trial and sentencing. On July 10, 2023, counsel filed a *praecipe* to withdraw with Appellant's consent. On July 11, 2023, the trial court conducted a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) and permitted Appellant to proceed *pro se*. Thereafter, Appellant filed a timely *pro se*, post-sentence motion on July 17, 2023. **See** Pa.R.Crim.P. 720(A)(1) ("[A] written post-sentence motion shall be filed no later than 10 days after imposition of sentence); **see also** 1 Pa.C.S.A. § 1908 (Whenever the last day of the filing period falls on a Sunday, such day shall be omitted from the computation). Appellant and the Commonwealth filed various post-sentence submissions thereafter. More specifically, Appellant filed a *pro se* writ of *habeas corpus* and the Commonwealth filed a motion for reconsideration of
*(Footnote Continued Next Page)*

Although Appellant purports to raise five issues on appeal, his arguments amount to two distinct claims, both of which he raised before the trial court. *See* Appellant's Brief at 4-5 and 16. First, Appellant argues that because he is a medical marijuana patient, he was "immune from arrest, prosecution, and penalty for the offense of DUI [c]ontrolled [s]ubstance – [m]etabolite[, under] 75 [Pa.C.S.A.] § 3802(d)(1)(iii)." *Id.* at 16. Appellant maintains that it was undisputed that on "March 23, 2021[, he] was a [m]edical [m]arijuana patient, in compliance with the MMA" and that he "asserted his immunity when he advised the officer of his serious medical condition" and "was taking his prescription as prescribed." *Id.* at 22. Appellant claims that he "was not impaired by the use of" medical marijuana, he did not abuse the use of medical marijuana, and he was capable of safe driving. *Id.* "Appellant asserts [] he is not prohibited from operating or being in actual physical control of the movement of a motor vehicle with a metabolite from" medical marijuana in his bloodstream. *Id.* at 23. Appellant claims that his due process rights were violated and "it is fundamentally unfair, and [] violates all concepts of decency and fair play to arrest, prosecute, and convict[] [A]ppellant, a [medical marijuana] patient with a serious medical

sentence. The trial court held hearings and ultimately denied post-sentence relief by order entered on November 14, 2023. On December 12, 2023, Appellant filed a *pro se* notice of appeal. The Commonwealth did not appeal. On December 21, 2023, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied in a timely manner by filing his *pro se* Rule 1925(b) statement on January 10, 2024. On February 13, 2024, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

condition, for a serious first degree misdemeanor, and remove him from his necessary prescribed treatment, by putting him in prison for 11 to 23 months, when he was in strict compliance with the MMA, and taking his lawfully prescribed medication." ***Id.*** at 25.

The Vehicle Code provides, in pertinent part, that:

> [a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> (1) There is in the individual's blood any amount of a:
>
> > (i) Schedule I controlled substance, as defined in the [Controlled Substances Act (CSA)];
>
> > $*$        $*$        $*$
>
> > (iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S.A. § 3802(d)(1). "The fact that a person charged with [DUI] is or has been legally entitled to use alcohol or controlled substances is not a defense to a charge of [DUI]." 75 Pa.C.S.A. § 3810.

In ***Commonwealth v. Dabney***, 274 A.3d 1283 (Pa. Super. 2022), we explained:

> The MMA was enacted effective May 17, 2016. Under the MMA, medical marijuana is defined as marijuana for certified medical use as set forth in the MMA. 35 P.S. § 10231.103. "Notwithstanding any provision of law to the contrary, use or possession of medical marijuana as set forth in [the MMA] is lawful within this Commonwealth." 35 P.S. § 10231.303. However, it is unlawful to use medical marijuana except as provided in the MMA. 35 P.S. § 10231.304(a). The MMA does not prevent civil or criminal penalties for "[u]ndertaking any task under the influence of medical marijuana when doing so would constitute negligence." 35 P.S. § 10231.1309(1).

*Dabney*, 274 A.3d at 1288–1289. As such, we opined that "medical marijuana remains a Schedule I controlled substance for purposes of Section 3802(d)(1)," that "no conflict exists between the MMA and the Vehicle Code," and that "[t]he Vehicle Code and the CSA render it illegal to drive with any amount of a Schedule I controlled substance in one's blood." *Id.* at 1291, *citing* 75 Pa.C.S.A. § 3802(d)(1)(i). Ultimately, we concluded that

> Section 3802(d)(1)(i) prohibits driving with marijuana in one's blood, notwithstanding the MMA. The MMA takes precedence over the CSA related to "the growth, processing, manufacture, acquisition, transportation, sale, dispensing, distribution, possession and consumption of medical marijuana permitted under" the MMA. 35 P.S. § 10231.2101. Therefore, compliance with the MMA will not constitute a crime under the CSA. However, what Section 3802(d)(1) prohibits is not "growth, processing, manufacture, acquisition, transportation, sale, dispensing, distribution, possession or consumption of medical marijuana" but rather **driving** with a controlled substance in one's blood. The MMA does not take precedence over laws not specified in 35 P.S. § 10231.2101. *See* 35 P.S. § 10231.1309(1) (allowing civil and criminal penalties for negligently undertaking tasks under the influence of medical marijuana). As such, [a defendant] is not facing a criminal conviction for the legal use of his medical marijuana [when] prosecuted for driving after such use [and] the MMA, CSA, and Vehicle Code can be read in harmony.
>
> Having found that Section 3802(d)(1)(i) applies to all marijuana, even medical marijuana, we likewise conclude[d] that Section 3802(d)(1)(iii) applies to metabolites of all marijuana, including medical marijuana. First, subparagraph (iii) references subparagraph (i), which has no exception for medical marijuana. Second, [] it is illegal to drive with the active substance of marijuana in one's blood. Therefore, it is not absurd or unreasonable that it is also illegal to drive with a metabolite of that substance in one's blood.

- 6 -

*Id.* at 1291–1292 (internal quotations, case citations, footnotes, and original brackets omitted; emphasis in original). For the foregoing reasons, we summarily reject Appellant's first claim that he was immune from arrest and prosecution for DUI controlled substance – metabolite under Section 3802(d)(1)(iii).

Next, Appellant argues that the trial court erred by denying suppression when it failed to consider the totality of the circumstances in determining that the police had probable cause to stop Appellant. Appellant's Brief at 26-33. Appellant has consistently maintained that there was only evidence that he crossed over the double yellow line on a single occasion, when "the officer's conduct of rapidly approaching [A]ppellant's vehicle at night, from behind, at a high rate of speed with high beams activated, tailgating too close, while [A]ppellant was entering a right curve in the road, distracting [A]ppellant causing him to swerve onto the double yellow center line of the roadway." *Id.* at 29 (footnote omitted); *see also* Trial Court Opinion, 2/13/2024, at 2-3 ("[Appellant] has consistently maintained, since the time he was first contacted by Trooper Mock, that the only reason he swerved was that Trooper Mock's rapid approach from behind surprised and scared him."). Appellant argues that "Trooper Mock proceeded … on a hunch [Appellant] may be impaired, after observing him leaving the parking lot of the Hill Valley Hotel[] Bar and Grill" and then "distracted" Appellant, thereby "essentially creat[ing] the probable cause [police] needed to stop him." Appellant's Brief at 31. Appellant challenges Trooper Mock's credibility, highlighting the fact that

Trooper Mock stated in the affidavit of probable cause that Appellant swerved over the double yellow line on five occasions, but testified at trial that Appellant only swerved twice, and video evidence taken from the police cruiser Mobile Vehicle Recorder (MVR) only shows a single, or the last, alleged infraction. *Id.* at 13-15.

> Our standard of review regarding suppression is well-settled:
>
> We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> We therefore apply a *de novo* review over the suppression court's legal conclusions.
>
> Where a traffic stop is based on the observed violation of the Vehicle Code or an otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop. A police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense.

*Commonwealth v. Gurung*, 239 A.3d 187, 190–191 (Pa. Super. 2020) (internal citations, quotations, and brackets omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted).

- 8 -

"Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway[.]" 75 Pa.C.S.A. § 3301(a). "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." 75 Pa.C.S.A. § 3309(1). We have previously determined that a police officer had probable cause to believe there was a violation of the Motor Vehicle Code provision requiring drivers to maintain their vehicle within a single lane, where an officer observed a vehicle cross the double yellow center line on two separate occasions while negotiating a curve. *See Commonwealth v. Feczko*, 10 A.3d 1285, 1292 (Pa. Super. 2010).

In this case, the trial court determined that "Trooper Mock testified that he observed a vehicle from some distance ahead of him swerve over the double-yellow centerline into the opposite lane and then back over into its own lane of travel" but that video footage taken from the police cruiser "MVR does not show the initial swerve[.]" Suppression Court Opinion, 7/22/2022, at 2-3. The trial court reviewed the MVR video footage at the suppression hearing and subsequently noted that Appellant "entered a right-hand bend" and "took the bend wide" and crossed over the double yellow lane for five seconds before fully returning to his own lane. *Id.* at 4. Such evidence established probable cause to believe that there was a violation of the Motor Vehicle Code in order to justify the traffic stop.

Moreover, regarding credibility, the trial court made the following observations pertaining to Trooper Mock:

Trooper Mock made a number of statements in his affidavit of probable cause that were false. These statements were openly discussed and admitted to by Trooper Mock at the hearing on [Appellant's] omnibus pretrial motion. *See* N.T., 12/13/2021, at 14-15, 20 [and] 21-23 (Trooper Mock noting that in his affidavit he wrote that [Appellant] crossed the centerline five times, in one of his reports he wrote that upon initial contact he smelled marijuana and alcohol emanating from [Appellant's] vehicle, and in his "sobriety test details" report he repeated the notation about odors emanating from the vehicle and further wrote that he smelled alcohol and marijuana on [Appellant's] person; in reality, [Appellant] crossed the centerline two times, Trooper Mock did not detect any odors upon initial contact, and he only smelled alcohol on [Appellant's] person after [Appellant] exited his vehicle). Trooper Mock could not explain any of these errors; rather, he could only state that he had made mistakes in preparing his reports and was "upset about it." *Id.*

\* \* \*

At the time he made the traffic stop, Trooper Mock was rather green. He had graduated from the police academy approximately eight months prior, and had only begun field training and begun working on his own three months prior. [*Id.*] at 10. While he could provide no insight into why or how he made the misstatements in question, he was clearly embarrassed and frustrated with himself for having made them, and did not want to repeat the experience of having to testify about such mistakes in the future (*i.e.*, he had already resolved to do better). And the misstatements were all of a nature that would be easy to make if the details of two separate incidents were inadvertently conflated during drafting or [if] a report from a prior incident [was] used as a model for the report of this incident. In other words, there was no evidence that Trooper Mock acted knowingly, intentionally, or with reckless disregard for the truth in making these misstatements. Rather, they are simply the product of inexperience and a need to pay closer attention to detail in preparing reports for multiple cases.

\* \* \*

Two crossings of the centerline, as opposed to five, is sufficient to establish probable cause to stop a vehicle for failure to keep right and failure to drive within a single lane – the two offenses [Appellant] was originally stopped for.

- 10 -

Trial Court Opinion, 2/13/2024, at 12-14 (footnotes and superfluous capitalization omitted).

Based upon our standard of review, applicable law, and review of the certified record in this matter, we discern no abuse of discretion or error of law in denying Appellant's request for suppression of evidence. The suppression court determined that Trooper Mock made mistakes with regard to his subsequent report and the affidavit of probable cause because of his inexperience, but ultimately credited Trooper Mock's testimony that Appellant drove over the yellow double centerline twice. Hence, while there was conflicting evidence regarding the number of times Appellant's vehicle crossed the yellow double centerline, the suppression court was free to believe all, part or none of the evidence and we will not usurp its decision. Moreover, one of the motor vehicle violations was captured on a police MVR which the suppression court viewed; hence, that violation was not subject to a meaningful challenge. As such, we conclude that the suppression record established probable cause to initiate a traffic stop for failure to keep right and failure to drive within a single lane pursuant to 75 Pa.C.S.A. §§ 3301(a) and 3309(1), respectively. Accordingly, Appellant's claim regarding suppression does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 1/28/2025