J-A23031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD TROY SMITH, JR. | : | |
| | : | |
| Appellant | : | No. 41 MDA 2024 |

Appeal from the Judgment of Sentence Entered December 11, 2023
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0003052-2023

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.: **FEBRUARY 18, 2025**

Appellant, Ronald Troy Smith, Jr., seeks review of the judgment of sentence entered by the Court of Common Pleas of York County (suppression court). Following a non-jury trial, Appellant was found guilty of several DUI offenses. He now argues in this appeal that the judgment of sentence must be overturned because the suppression court erred in admitting the evidence obtained during the investigative detention which immediately followed a traffic stop of his vehicle. We affirm.

At about 10:45 p.m., on the evening of February 2, 2023, Officer Sean Lake was parked in his patrol vehicle so that he could monitor passing traffic for window tint violations. During that time, the officer observed a white truck which appeared to be travelling over the speed limit; the officer also could not see into the vehicle due to its dark tints. Office Lake looked up the vehicle's

registration and saw that it had expired the prior month. He then conducted a traffic stop of the vehicle, which was being driven by Appellant.

Upon approaching the vehicle, the officer saw that Appellant was holding a freshly lit cigarette. He noticed further that Appellant had "bloodshot" eyes. Despite the smell of cigarette smoke, the officer could detect the "slight" odor of burnt marijuana coming from inside the vehicle. N.T. Pretrial Hearing, 9/18/2023, at 8. There was one female passenger in the vehicle, so the officer could not identify whether the smell of marijuana was coming from Appellant or the other individual.

Officer Lake returned to his patrol vehicle to get the window tint meter and to check whether Appellant's driver's license was valid. The officer then walked back to Appellant's vehicle and measured the window tint. At Appellant's request, the officer showed him the meter's reading, which indicated a tint level that violated the Vehicle Code.

From there, Officer Lake transitioned to a DUI investigation. The officer directed Appellant to exit his vehicle so that he could evaluate Appellant's eyes for symptoms of intoxication (horizontal gaze nystagmus (HGN) and lack of convergence), and have Appellant perform a series of field sobriety exercises (Palm Pat and Finger to Nose). Appellant stepped out of the vehicle for that purpose, but then went back inside it briefly to retrieve his glasses from the center console. As Appellant did so, the officer saw a glass pipe in plain view. Appellant admitted that the pipe belonged to him, and that it was used to smoke marijuana.

During the evaluation of Appellant's eyes, he could not follow the stimulus used by the officer to detect HGN, and the officer observed eye lid tremors. Appellant was unable to touch the tip of his nose with his outstretched fingers. The officer believed that Appellant's performance of these exercises indicated impairment from a controlled substance.

The officer went on to search Appellant's vehicle.[1] No contraband was found during that search, but the officer did retrieve a baggie of marijuana from the female passenger's person. *See id*., at 12-13. Officer Lake believed, from his experience, that Appellant had lit his cigarette moments after being pulled over to mask the odor of marijuana; the officer also knew from his training and experience that bloodshot eyes may be a symptom of marijuana use, and that the glass pipe he observed was used to smoke marijuana. *See id*., at 11. About 10 minutes elapsed between the moment when Appellant was pulled over, and his vehicle was searched. *See id*., at 12.

The Commonwealth later charged Appellant with seven misdemeanor offenses – DUI General Impairment Incapable of Driving Safely, 1st Offense (Count 1); Possession of Drug Paraphernalia (Count 2); Marijuana Possession of a Small Amount, Personal Use (Count 3); DUI of Controlled Substance, Schedule I, 1st Offense (Count 5); DUI of Controlled Substance, Metabolite, 1st Offense (Count 6); DUI of Alcohol or Controlled Substance, 1st Offense

---

[1] Appellant consented to this vehicle search after his detention began, and the validity of his consent is not at issue in the present appeal, as no incriminating evidence against Appellant was obtained pursuant to that search.

(Count 8); and DUI of Controlled Substance, Impaired Ability, 1st Offense (Count 9). Appellant also was charged with the summary offenses of Driving an Unregistered Vehicle (Count 4), and Improper Sunscreening (Count 7).

Prior to trial, Appellant moved to suppress the evidence obtained after his vehicle was stopped. A suppression hearing was held on September 18, 2023, at which the Commonwealth presented the testimony of Officer Lake, who recounted the above facts. The Commonwealth also introduced into evidence a recording of the entire incident which had been taken by Officer Lake's body camera.

Officer Lake was the Commonwealth's only witness, and the suppression court found him credible. The suppression court ruled that the officer had probable cause for the initial traffic stop, and that the combination of the officer's training and experience; Appellant's bloodshot eyes; his lit cigarette; and the odor of burnt marijuana in the vehicle provided the officer with reasonable suspicion of a DUI offense, justifying an investigative detention. Appellant's suppression motion was therefore denied.

A non-jury trial was scheduled for November 3, 2023. On that date, the Commonwealth withdrew Counts 2, 3, 4, and 7, and the parties agreed to a non-jury trial on the remaining charges. The Commonwealth then moved to admit into evidence Officer Lake's Affidavit of Probable Cause. The suppression court admitted the Affidavit and relied on the facts contained therein to find Appellant guilty as to Counts 1, 5, 6, and 8. *See* N.T. Trial, 11/3/2023, at 4. As to Count 8, Appellant was sentenced to a six-month term

of supervised probation. The suppression court found that the remaining counts merged with Count 8, and no further penalty was imposed.

Appellant filed a timely appeal, challenging the denial of his suppression motion.[2] He argues that all of the evidence obtained during his detention was unlawfully obtained because, at the time the DUI investigation began, the police had no reasonable suspicion that Appellant was an impaired driver, or that he had otherwise committed a crime. According to Appellant, the mere smell of marijuana was not enough to establish that he was impaired by the substance to the extent that he could not operate his vehicle safely. The officer observed no erratic driving or behavior on his part, and Appellant notes that there was a passenger in his vehicle, preventing the officer from identifying the source of the odor of marijuana. *See* Appellant's Brief, at 16-18.

When reviewing the denial of a motion to suppress evidence, this Court must only consider "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Jones***, 121 A.3d 524, 526 (Pa. Super. 2015). The evidence must be construed in favor of the party who prevailed at trial (here, the Commonwealth), and where the record supports the suppression court's factual findings, those findings are binding on appeal. ***See***

---

[2] Both Appellant and the suppression court complied with Pa.R.A.P. 1925.

*id*. The suppression court's legal conclusions are afforded less deference, as we may reverse such rulings to correct a misapplication of law. ***See id***.

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee an individual's freedom from unreasonable searches and seizures." ***Commonwealth v. Bostick***, 958 A.2d 543, 550 (Pa. Super. 2008) (quoting ***Commonwealth v. El***, 933 A.2d 657, 660 (Pa. Super. 2007)). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1201 (Pa. Super. 2002) (citation omitted).

> There are three recognized categories of police-citizen interactions:
>
> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Way***, 238 A.3d 515, 518 (Pa. Super. 2020) (quoting ***Commonwealth v. Downey***, 39 A.3d 401, 405 (Pa. Super. 2012)).

In the context of a traffic stop, motorists may be further detained for reasons unconnected to a traffic violation where the officer has developed the requisite level of suspicion that a crime has occurred:

To establish grounds for "reasonable suspicion" . . . the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity.

In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight . . . to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Sloan*, 303 A.3d 155, 164 (Pa. Super. 2023) (quoting

*Commonwealth v. Smith*, 917 A.2d 848, 852 (Pa. Super. 2007)) (brackets

omitted, ellipses in original).

In the present case, the suppression court found that Officer Lake had articulated specific observations which led him to reasonably believe that Appellant had committed a DUI offense:

- The officer could detect the odor of marijuana coming from inside Appellant's vehicle;

- Appellant was smoking a freshly lit cigarette at the time he was pulled over, suggesting to the officer that Appellant was trying to conceal the odor of marijuana.

- The officer observed that Appellant's eyes were bloodshot; and

- Appellant's vehicle was speeding just prior to the traffic stop.

Suppression Court 1925(a) Opinion, 2/20/2024, at 9-10; **see also** Appellee's Brief, at 17-18.[3]

Although the Medical Marijuana Act[4] eliminates the presumption that a motorist's mere possession of marijuana is illegal, medical marijuana remains a Schedule I controlled substance, and the Vehicle Code "render[s] it illegal to drive with any amount of a Schedule I controlled substance in one's blood." **Commonwealth v. Dabney**, 274 A.3d 1283, 1291 (Pa. Super. 2022). Accordingly, we have found in several recent and analogous cases that the odor of marijuana in a motorist's vehicle contributed to an officer's reasonable suspicion of impaired driving. **See e.g., Commonwealth v. Clark**, 326 A.3d 425 (Pa. Super. 2024) (unpublished memorandum) (investigative detention following a traffic stop found lawful where officer smelled faint odor of burned marijuana in defendant's vehicle, defendant's eyes were bloodshot and glassy, and defendant behaved erratically); **see also Commonwealth v. Sanchez**,

---

[3] Both the Commonwealth and the suppression court referred to the glass pipe found in Appellant's vehicle as a fact which established the officer's reasonable suspicion of a DUI offense. However, that fact must be discounted for those purposes because the officer only observed the pipe *after* he had taken custody of Appellant by directing him to step out of his vehicle to complete sobriety exercises. The legality of the post-traffic stop detention hinged on whether the officer had reasonable suspicion *prior* to the moment when the DUI detention began. **See Commonwealth v. Hicks**, 208 A.3d 916, 932 (Pa. 2019) (explaining that an investigative detention must be "justified at its inception," prior to the acquisition of evidence arising from that detention) (quoting **Terry v. Ohio**, 392 U.S. 1, 20 (1964)).

[4] The Medical Marijuana Act was enacted in 2016. **See** 35 P.S. §§ 10231.101-10231.2110.

No. 1680 MDA 2023 (Pa. Super. filed October 25, 2024) (same); **Sloan**, 303 A.3d at 166 (same); **Dabney**, 274 A.3d at 1292-93 (same).

There are no facts in the record which can materially distinguish the present case from the above decisions in which we upheld the transition of a traffic stop into an investigative detention. Thus, we find that the suppression court did not err in determining that the circumstances of the present case were sufficient to authorize the officer to investigate whether Appellant had committed a DUI offense, and the judgment of sentence must stand.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/18/2025