J-S40007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LANDON TYLER FLOOD | : | |
| | : | |
| Appellant | : | No. 3056 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 27, 2023
In the Court of Common Pleas of Lehigh County
Criminal Division at No: CP-39-CR-0002713-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LANDON TYLER FLOOD | : | |
| | : | |
| Appellant | : | No. 3057 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 27, 2023
In the Court of Common Pleas of Lehigh County
Criminal Division at No: CP-39-CR-0002715-2020

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY STABILE, J.: **FILED APRIL 10, 2025**

Appellant, Landon Tyler Flood, appeals from the judgments of sentence imposed by the Court of Common Pleas of Lehigh County on October 27, 2023. Although these cases are consolidated, we will address each in turn as the facts and legal issues are distinct. We affirm as to both.

On February 9, 2021, Appellant initially entered negotiated guilty pleas on both dockets and was sentenced to an aggregate of seven months and

three days to three years of incarceration, followed by a consecutive probationary term of two years. No direct appeal was taken. On February 23, 2021, Appellant moved to withdraw his guilty pleas. A hearing was held on March 3, 2021, wherein Appellant appeared *pro se* and alleged ineffective assistance of trial counsel regarding his guilty pleas. Based on Appellant's assertion at the hearing, the trial court took the matter under advisement and appointed counsel. On April 26, 2021, Appellant filed a counseled motion to withdraw his guilty plea and a and petition for post-conviction relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. Appellant and his counsel failed to appear at the May 27, 2021, hearing, and the PCRA court dismissed his motion and PCRA petition.

On October 27, 2021, Appellant filed a *pro se* PCRA petition to withdraw his guilty pleas. The PCRA court appointed counsel, who filed a motion to withdraw and a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). On December 28, 2021, the PCRA court denied counsel's request to withdraw and scheduled an evidentiary hearing on Appellant's PCRA petition. On February 1, 2022, after a hearing, the PCRA court granted Appellant's petition and allowed him to withdraw his guilty pleas because the parties agreed that the sentences imposed were illegal.[1] **See** Order, 2/1/22.

_____

[1] The sentence was deemed illegal because Appellant failed to get a drug and alcohol evaluation prior to sentencing in accordance with 75 Pa.C.S.A. §
*(Footnote Continued Next Page)*

This is where the commonality between the cases ends.  We now address each

case in turn.

<u>3056 EDA 2023</u>

The trial court aptly summarized the factual background of this case as

follows:

> On January 15, 2020 at approximately 7:00 p.m., Jacob R.
> Snyder, the owner of the residence at 2957 Old Post Road,
> Slatington, Lehigh County, Pennsylvania, was home when he
> suddenly felt the corner of his house vibrating.  He exited his home
> and observed a minivan roughly two feet from the corner of his
> house with the engine revving.  The minivan had not come into
> physical contact with Mr. Snyder's residence.  Mr. Snyder testified
> that he saw [Appellant] in the driver's seat of the vehicle.
>
> * * * *
>
> After the police [were called], Trooper Ryan Fraunfelter of the
> Pennsylvania State Police was dispatched to the scene of the
> incident.  Trooper Fraunfelter testified that upon his arrival, he
> saw a vehicle which exited the right side of the roadway and
> traveled through the two adjacent properties before stopping at
> the second.  Trooper Fraunfelter approached [Appellant].  He
> testified [Appellant] appeared "disheveled," and his pupils were
> dilated.   The trooper also detected an odor of marijuana
> emanating from [Appellant].
>
> Based on these observations, Trooper Fraunfelter suspected
> [Appellant] was under the influence and conducted standardized
> field sobriety tests, [wherein] Trooper Fraunfelter concluded
> [Appellant] was under the influence of a controlled substance.  He
> based this determination on [Appellant's] performance on the
> tests, as well as his observation of [Appellant] having a green
> tongue and rapid eyelid tremors during the modified Romberg

_____

3816(a) ("every person convicted of [DUI] . . . shall, prior to sentencing . . .
be evaluated . . . to determine the extent of the person's involvement with
alcohol or controlled substances").

test. As a result, Trooper Fraunfelter concluded [Appellant] was not capable of safe driving.

Trooper Fraunfelter spoke with [Appellant], who indicated he was driving, noticed a rock in the roadway, and tried to make an evasive maneuver, which led him to veer off the road and across the two properties. Trooper Fraunfelter asked [Appellant] about his marijuana usage and [Appellant] admitted he used marijuana earlier in the day. [Appellant] was not free to leave during this interaction.

Trial Court Opinion, 12/5/22, at 2-4 (citations to record omitted).

Appellant was charged with driving under the influence ("DUI") – general impairment, DUI – controlled substance, and various summary violations. After the PCRA court granted Appellant's petition to withdraw his guilty plea, he filed a motion to suppress. Specifically, in this case, Appellant argued that Trooper Fraunfelter conducted an illegal, warrantless search of his mouth. N.T. Suppression, 6/13/22, at 9. The trial court denied the motion, finding that Appellant failed to establish that he had a reasonable expectation of privacy in the color of one's tongue. Trial Court Opinion, 12/5/22, at 14-15.

The case proceeded to a non-jury trial on April 24, 2023, wherein Appellant was found guilty of DUI – controlled substance and summary careless driving. On October 27, 2023, Appellant was sentenced to 72 hours to 6 months of incarceration on the DUI. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant raises a sole issue for our review:

Whether the [trial court] erred, under both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the

Pennsylvania Constitution, when it failed to suppress evidence obtained during a warrantless search of [Appellant's] mouth?

Appellant's Brief, at 4.

Our standard of review when addressing a challenge to the denial of a suppression motion is

> limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted). Our scope of review is limited to the record created during the suppression hearing. *In re L.J.*, *supra*.

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019). "If there is sufficient evidence of record to support the suppression court's ruling and the court has not misapplied the law, we will not substitute our credibility determinations for those of the suppression court judge." *Commonwealth v. Johnson*, 86 A.3d 182, 187 (Pa. 2014).

In this case, Appellant contends that Trooper Fraunfelter "performed a search of [Appellant's] mouth for the purpose of discovering evidence[, *i.e.*, a

green tongue[2],] and did so without a warrant." Appellant's Brief, at 15. He argues that the warrantless search was illegal because the Commonwealth failed to prove an exception to the warrant requirement. *Id.* at 16. The trial court found that Appellant failed to establish that he had a reasonable expectation of privacy in the color of his tongue, and therefore the Fourth Amendment and Article I, § 8 were not implicated.

Without deciding whether (1) an officer's request for a defendant to stick out their tongue constitutes a search, and (2) Appellant's constitutional rights were violated if this requested constituted a search, we conclude that even if there was error, such error was harmless.[3] "An error is harmless if it could

---

[2] When police officers attend training to become a Drug Recognition Expert ("DRE"), they are taught that "some users of marijuana have displayed a green coating on their tongue after recent use[,]" but that it does not occur with all users. NHTSA Drug Recognition Expert Course (DRE) 7-day School, Instructor Guide, R5/13 Edition, Session 21. The manual further directs instructors to "[p]oint out that there are no known studies that confirm marijuana [use] caus[es] a green coating on the tongue." *Id.*

[3] We can raise harmless error *sua sponte*. *See Commonwealth v. Hamlett,* 234 A.3d 486, 492 (Pa. 2020) ("*sua sponte* invocation of the harmless error doctrine is not inappropriate as it does nothing more than affirm a valid judgment of sentence on an alternative basis") (citation omitted); *Commonwealth v. Frein*, 206 A.3d 1049, 1070-71 (Pa. 2019) ("In light of the substantial physical evidence establishing [a]ppellant as the perpetrator of these crimes, we conclude that the trial court's error in denying [a]ppellant's motion to suppress the statements he made in his videotaped interview was harmless"); *Commonwealth v. Phillips*, 327 A.3d 1236, 1247 (Pa. Super. 2024) (finding trial court erred when it denied suppression of the defendant's statements; even though Commonwealth did not argue harmless error, it may be raised *sua sponte* and we concluded that the error was not harmless).

not have contributed to the verdict, or stated conversely, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction." ***Commonwealth v. Poplawski***, 130 A.3d 697, 716 (Pa. 2015) (citation omitted). Harmless error occurs where:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; or
>
> (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or
>
> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Fulton***, 179 A.3d 475, 493 (Pa. 2018).

The properly admitted and uncontradicted evidence of guilt in the instant case was so overwhelming, and the prejudicial effect of the alleged error was so insignificant, that it could not have contributed to the verdict. Trooper Fraunfelter responded to a single car accident where the vehicle left the roadway and travelled through two properties before it stopped short of striking Snyder's property. N.T. Hearing, 6/13/22, at 17. While speaking with Appellant, Trooper Fraunfelter noted that Appellant appeared disheveled and had dilated pupils. *Id.* at 19. He further noticed an odor of burnt marijuana emanating from Appellant's person and/or vehicle, and Appellant admitted to smoking marijuana earlier in the day. *Id.* at 20-22, 28 31.

As a result, Trooper Fraunfelter believed Appellant was under the influence of marijuana and conducted standardized field sobriety tests ("SFST") and an Advanced Roadside Impairment Driving Evaluation ("ARIDE"). *Id.* at 20. Trooper Fraunfelter's observations – the single car accident, Appellant's disheveled appearance and dilated pupils, and the odor of marijuana – were sufficient to support the reasonable suspicion necessary to request Appellant to perform field sobriety tests. *See Commonwealth v. Cauley*, 10 A.3d 321, 326-327 (Pa. Super. 2010) (officer had reasonable suspicion to conduct field sobriety tests where the defendant had bloodshot eyes and smelled of alcohol). The SFST included tests that were unrelated to the officer's request for Appellant to stick out his tongue, such as the horizontal gaze nystagmus test, the walk and turn test and the one leg stand test. N.T., 6/13/22, at 20. Appellant's performance on the SFST provided the officers with probable cause to arrest Appellant and subject him to a blood draw. *See Commonwealth v. Salter*, 121 A.3d 987, 997 (Pa. Super. 2015) (finding probable cause to arrest under suspicion of DUI based on field sobriety tests).

The results of the blood draw indicated the presence of THC in Appellant's system. *See* N.T. Hearing, 6/13/22, Commonwealth's Exhibit C-2. Thus, the uncontradicted and admitted evidence to support his DUI conviction under 75 Pa.C.S.A. § 3802(d)(1)(i) was so overwhelming, any error relative to the color of Appellant's tongue could not have contributed to the

verdict. *See Commonwealth v. Dabney*, 274 A.3d 1283, 1291 (Pa. Super. 2022) (pursuant to Section 3802(d)(1)(i), it is illegal to drive with any amount of a Schedule 1 controlled substance in one's blood). Thus, no relief is due on this claim.

We now turn to Appellant's second case.

### 3057 EDA 2023

The trial court aptly summarized the facts in this case as follows:

On April 28, 2020, at approximately 2:00 in the morning, Officer Donald Stratton of the Catasauqua Police Department . . . observed a vehicle traveling up Wood Street, a one-way road, going the wrong way without any headlights. He followed the vehicle and activated his overhead lights in order to initiate a traffic stop. The vehicle stopped [and] Officer Stratton interacted with the operator, whom he identified as [Appellant]. There was a passenger . . . in the vehicle as well[.]

Officer Stratton testified that [Appellant] appeared confused when asked why he went the wrong way down the road. [Appellant] indicated he was on his way home after being at the Catty Mart. During the course of this conversation, Officer Stratton smelled the odor of marijuana coming from the vehicle. He observed that [Appellant] appeared lethargic; he was tired and his responses were slow. Officer Stratton and Officer [Richard] Reis asked both individuals to step out of the vehicle and they searched the vehicle. They found a clear plastic bag with marijuana in the glove box, as well as two burnt marijuana cigarettes in the ashtray. The officers also found "Game" wrappers, which are cigar wrappers in which people wrap marijuana.

Officer Reis . . . echoed the testimony of Officer Stratton with respect to his observations of [Appellant] and smelling marijuana coming from [Appellant's] vehicle. Officer Reis had [Appellant] perform field sobriety tests at the scene.

* * * *

- 9 -

[After completing the field sobriety tests, Officer Reis concluded that] Appellant was likely under the influence of marijuana and incapable of safe driving. . . . [Appellant] was transported to Lehigh County Central Booking Center where he consented to a blood draw. The blood tests revealed the presence of THC in [Appellant]'s system.

Trial Court Opinion, 12/5/22, at 7-10.

Appellant was charged with driving under the influence ("DUI") – controlled substance schedule I, DUI – controlled substance impaired ability, use/possession of drug paraphernalia, small amount of marijuana, and various summary violations. After the PCRA court granted Appellant's petition to withdraw his guilty plea, he filed a motion to suppress. Specifically, in this case, Appellant argued that Officers Stratton and Reis conducted an illegal, warrantless search of his vehicle. Omnibus Pretrial Motion, 3/29/22, at 4. The trial court granted the motion in part and suppressed the marijuana and paraphernalia based upon the warrantless search of Appellant's vehicle. Trial Court Opinion, 12/5/22, at 14.

On June 1, 2023, the day of jury selection in this case, Appellant filed a motion *in limine* to preclude evidence of Appellant's performance on the SFST and the results of chemical testing "as fruit from the poisonous tree." *See* Motion in Limine, 6/1/23, ¶ 6. He argued that those results should be suppressed because the illegal search occurred before the SFST and chemical testing had taken place. *Id.* He further argued that his arrest was illegal because the officers considered the now suppressed evidence when deciding to arrest Appellant for DUI. *Id.*

- 10 -

The trial court denied Appellant's motion after a hearing immediately preceding the commencement of jury selection. After a two-day trial, the jury found Appellant guilty of both DUI offenses, and the trial court found Appellant guilty of two summary offenses. On October 27, 2023, Appellant was sentenced to a minimum term of 90 days, and a maximum term of one year of incarceration. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant raises the following issues for our consideration:

1. Whether the [trial court] erred, under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, when it refused to suppress all physical evidence and statements obtained after the illegal, warrantless search of [Appellant's] vehicle?

2. Whether the trial court erred when it denied [Appellant's] motion *in limine* seeking exclusion from trial of all physical evidence and statements obtained after the illegal, warrantless search of [Appellant's] vehicle?

3. Whether the trial court erred when it recognized Melanie Stauffer as an expert in toxicology over [Appellant's] multiple, timely objections?

Appellant's Brief, at 4-5.

Our standard of review when addressing a challenge to the denial of a suppression motion is

limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may

- 11 -

consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted). Our scope of review is limited to the record created during the suppression hearing. ***In re L.J.***, ***supra***.

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Luczki***, 212 A.3d 530, 542 (Pa. Super. 2019). "If there is sufficient evidence of record to support the suppression court's ruling and the court has not misapplied the law, we will not substitute our credibility determinations for those of the suppression court judge." ***Commonwealth v. Johnson***, 86 A.3d 182, 187 (Pa. 2014).

In the instant case, the trial court suppressed the physical evidence, *i.e.* marijuana and drug paraphernalia, based upon an illegal search of Appellant's vehicle. Appellant contends, however, that all the evidence of his DUI offense should have been suppressed as fruit of the illegality. Appellant's Brief, at 16.

"Evidence constitutes fruit of the poisonous tree, and must be suppressed, if it was obtained by 'exploitation' of the illegality . . . and so long as the taint of that illegality has not been purposed." ***Commonwealth v. Shabezz***, 166 A.3d 278, 290 (Pa. 2017). The general rule excludes all evidence unlawfully seized, as well as the direct and indirect products of the illegality. ***Commonwealth v. Santiago***, 209 A.3d 912, 928 (Pa. 2019). "[E]xcludable evidence includes proof that is tangible and physical materials,

- 12 -

items observed, words overheard, confessions or statements made by the accused, and eyewitness identification testimony." *Id.* "The inquiry simply is whether the evidence was obtained via exploitation of the initial illegality." *Shabezz*, 166 A.3d at 289.

Notwithstanding the illegal search, we conclude that Appellant's performance on the SFTS and blood draw results were not obtained as a result of the illegal vehicle search. The initial traffic stop was valid. Appellant was stopped because he was driving his vehicle the wrong way down a one-way without headlights at 2:00 a.m. N.T. Hearing, 8/4/22, at 15. Upon speaking with Appellant, the driver, Officer Stratton noted that (a) Appellant appeared confused and lethargic, (b) had red glassy eyes, and (c) he could smell an odor of marijuana coming from inside the vehicle. *Id.* at 15-17. As a result of these observations, Officer Stratton suspected Appellant was under the influence of marijuana. N.T. Hearing, 8/4/22, at 17-18. Moreover, Officer Reis specifically testified that his opinion that Appellant was under the influence of marijuana was not informed by what was later found during the illegal search of his vehicle. N.T. Hearing, 9/9/22, at 23.

Those observations – made prior to the illegal search – led the officers to believe Appellant was driving under the influence and were sufficient to support the reasonable suspicion necessary to request Appellant to perform field sobriety tests. *See Cauley*, 10 A.3d at 326-327. Appellant's performance on the SFST, in turn, provided the officers with probable cause

- 13 -

to arrest Appellant and subject him to a blood draw. ***See Salter***, 121 A.3d at 997.

Accordingly, we cannot conclude, in this case, that the evidence of Appellant's performance on the SFST and the results of his blood draw were obtained by exploiting the illegal search of his vehicle. Therefore, the trial court did not err or abuse its discretion when it declined to suppress all evidence as fruit of the poisonous tree.

Appellant's second issue is related. On the day of jury selection, Appellant filed a motion *in limine* to exclude all evidence as fruit of the poisonous tree. ***See*** Motion in Limine, 6/1/23. It was denied after brief argument. ***See*** N.T. Trial, 6/1/23, at 2-13.

We review a trial court's decision to grant or deny a motion *in limine* for an abuse of discretion. ***Commonwealth v. Zugay***, 745 A.2d 639, 645 (Pa. Super. 2000). "The admission of evidence is committed to the sound discretion of the trial court" and will not be overruled absent evidence of "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." ***Commonwealth v. Mangel***, 181 A.3d 1154, 1158 (Pa. Super. 2018) (citation omitted).

For the same reasons as previously discussed, the trial court did not abuse its discretion when it denied Appellant's motion *in limine*. The officers' observations of Appellant prior to the illegal search were sufficient to support the reasonable suspicion necessary to conduct field sobriety tests, which in

turn, led to probable cause for arrest. ***See Cauley, Salter, supra.*** Thus, no relief is due on this claim.

Appellant's third claim is that the trial court erred when it recognized Melanie Stauffer as an expert in toxicology. He argues that Ms. Stauffer was not qualified because the analysis of the blood was done by a machine, and not her personally. Appellant's Brief, at 19-20; N.T. Trial, 6/1/23, at 108-09.

The admission of expert testimony is within the sound discretion of the trial court and will not be overruled absent an abuse of that discretion. ***Commonwealth v. Powell***, 171 A.3d 294, 305 (Pa. Super. 2017). Expert testimony is governed by Pa.R.E. 702, which reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c)  the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Appellant does not cite, nor can we find, authority that an individual qualified as an expert in toxicology must *personally* analyze the blood rather than rely on machinery for that task. We find ***Commonwealth v. Yohe***, 79 A.3d 520 (Pa. 2013) to be instructive. There, the Commonwealth presented

Dr. Lee Blum as an expert in toxicology. *Id.* at 553. He was an assistant laboratory director and a toxicologist at National Medical Services ("NMS") labs. *Id.* Dr. Blum was responsible for the lab's quality assurance program and client service, as well as reviewing analytic testing, writing reports, and testifying at trial. *Id.* He reviewed and verified the raw data received from the gas chromatography machine. *Id.* at 523-24.

In *Yohe*, Dr. Blum did not personally analyze the blood samples, observe the blood samples being placed in the gas chromatography machine, or handle any of the defendant's blood samples. *Id.* at 525. The defendant did not object to Dr. Blum's qualifications as an expert in toxicology. *Id.* at 524. Rather, he objected on the grounds that Dr. Blum's testimony regarding the toxicology report, as well as the admission of the report, violated his right to confrontation guaranteed by the Sixth Amendment of the United States Constitution because the specific lab technicians who performed the testing were not called as witnesses. *Id.* Our Supreme Court held there was no violation because "Dr. Blum's expert opinion was contained in the toxicology report and was the result of his independent verification of the chain of custody and his independent analysis of the three test results produced by two lab technicians[.]" *Id.* at 541.

Similar to the expert in *Yohe*, Ms. Stauffer is a technical specialist employed by Health Network Laboratories ("HNL") in its toxicology department. N.T. Trial, 6/1/23, at 96. She is responsible for processing and

- 16 -

reviewing data, method development, troubleshooting, and monitoring quality control. *Id.* Ms. Stauffer has spent 30 of her 36 years working at HNL in the toxicology department. *Id.* at 96-97. She has an associate's degree in medical laboratory technology and certified by the American Society of Clinical Pathology. *Id.* at 97.

Ms. Stauffer explained that when blood is drawn for a patient, a courier service delivers it to HNL and placed into secure storage. *Id.* at 101. The sample goes through an extraction process and is placed in a liquid chromatography-mass spectrometer for analysis. *Id.* at 104. Once the analysis is complete, the machine prints the results. *Id.* at 106. The data is then reviewed for accuracy by one individual and certified by a second individual. *Id.* at 106-07.

Appellant's only argument, without providing any authority, is that Ms. Stauffer should not have been qualified as an expert because she merely "pull[ed] numbers off of a machine[.]" *Id.* at 108-09. As explained by Ms. Stauffer, the process for analyzing bodily fluid samples is automated. *Id.* at 101-07. The only human involvement is placing the sample into the machine, removing it from the machine once the analysis is complete and reviewing and certifying the data for accuracy. *Id.* Moreover, Rule 702 does not require a witness to have hands-on experience in a given field in order to testify as an expert. *See Commonwealth v. Taylor*, 209 A.3d 444, 449 (Pa. Super. 2019) (an expert witness must only "possess more knowledge than is

- 17 -

otherwise within the ordinary range of training, knowledge, intelligence or experience" to testify). Accordingly, we conclude that the trial court did not abuse its discretion by admitting Ms. Stauffer as an expert in toxicology.

Judgments of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/10/2025